**Sherman HOLDRIDGE,
Plaintiff–Appellant,**

v.

**Dick THORNBURGH Attorney General,
Defendant–Appellee.**

**Civ. A. No. 3–90–CV–0548–H.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 20, 1992.

---

James K. Hopps, Ft. Worth, Tex. and David R. Schleicher & Lee Bothby, Boothby Ziprick & Yingst, Washington, D.C., for plaintiff-appellant.

Stafford Hutchinson, Asst. U.S. Atty., Dallas, Tex., for defendant-appellee.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiff–Appellant Sherman Holdridge's Appeal Brief, filed May 1, 1992, the appeal brief of Defendant–Appellee, the Attorney General, dated July 2, 1992, and Holdridge's Reply Brief, filed July 30, 1992.

## I. BACKGROUND

This is an appeal from a non-jury trial before a United States Magistrate Judge. Proceeding pursuant to 28 U.S.C. § 636(c), the magistrate tried this Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, suit on January 13 and 14, 1992. On January 16, 1992, the magistrate filed Findings of Fact and Conclusions of Law denying relief and dismissed Holdridge's claim with prejudice. Holdridge filed his Notice of Appeal on March 16, 1992.

In late 1987, an official at the United States Bureau of Prisons (BOP) informed J. Wayne Marlow, the superintendent of prison industries at the Big Spring, Texas Prison Camp, that the BOP had authorized the creation of a broom making facility at Big Spring to replace a broom making factory destroyed at the Atlanta Federal Penitentiary. Marlow initially sought to staff the

broom making plant with two positions: a manager and a foreman. Under the terms of a bargaining agreement between the BOP and BOP employees, an employment position can be filled by a newly hired BOP employee only if current BOP employees are first given notice and an opportunity to apply for the position. Such notice may be given locally or nationwide. In this case nationwide notice was given for the manager position. The BOP's Central Office Selection Board in Washington, D.C. selected Sam Brence, who had been a floor foreman at a prison industries plant at El Reno, Oklahoma, to be the manager on March 23, 1988.

Based upon Marlow's informal inquiries, which found a lack of interest from any past or present BOP employee with experience with broom making, the foreman position was reduced to broom maker foreman trainee. On January 15, 1988, the Big Spring Prison Camp published a local vacancy announcement for two broom maker foreman trainee positions. Paragraph 8 of the magistrate's Findings of Fact explains that a local vacancy notice is published only at the facility at which a vacancy exists. When such an announcement is made, it indicates a period during which applications may be submitted. Following the expiration of this period, a local promotion board creates a list of best qualified applicants. From this list, the warden fills the vacancies.

The closing date for the applications in this case was February 3, 1988. Under Office of Personnel Management (OPM) regulations, a federal agency cannot accept applications submitted after the closing date reflected in the vacancy notice. On February 5, 1988, the local promotion board selected seven applicants as being the best qualified. On February 8 and March 8, 1988 respectively, Warden Joseph Crabtree selected Art Williams and Robert Speaker to be broom maker foreman trainees.

At this time, Holdridge worked in the broom making factory of E.K. Birdwell, a plant which was on the verge of closing. On March 11, 1988, three days after the foreman trainee positions had been filled, Holdridge contacted Marlow and inquired about the planned Big Spring broom factory. On March 18, 1988, Holdridge travelled to Big Spring and met with Marlow to discuss working in the camp broom factory. Marlow was enthusiastic about Holdridge's experience, noting that it exceeded the experience of the other applicants. There was no evidence that Marlow knew that the warden had filled the trainee positions. Marlow did tell Holdridge that his age, 55, was a serious problem, and that he could not be employed by the BOP unless the age restriction was waived.[1] Furthermore, Holdridge had no prior federal civil service employment, did not have "competitive status," and did not have any prior law enforcement experience. Moreover, Holdridge never requested or completed an OPM Form 171 Application for United States Government employment.

At a subsequent meeting, Holdridge, Marlow, and Robert Mehan, a vice president of the Howard Community College, discussed the possibility that the college would hire Holdridge as an instructor and assign him to train inmates at the prison broom plant. Later, in March of 1988, Mehan informed Holdridge that the college could not hire him. Holdridge learned that the foreman trainee positions had been filled when he visited the Big Spring Prison Camp on April 28, 1988. Holdridge then filed his Notice of Intent to Sue as required by the ADEA, and, after exhausting available administrative remedies, filed this suit.

The BOP had a mandatory retirement age of 55 for its employees who were law enforcement officers at all times relevant to this action. Under the authority of 5 U.S.C. § 3307(d), the BOP set a maximum entry age of not more than 35 years for its employees serving in the position of law enforcement officers. The stated purpose

1. The Findings of Fact state that Marlow told Holdridge that Holdridge could not be employed because of his age, "unless the age restriction was waived." However, Defendant observes that Holdridge testified at trial that the term "waiver" was never used in this conversa-

tion with Marlow. See TR. at 42, 76–77. It appears that Holdridge understood Marlow to say that some sort of special arrangement might have to be made to allow Holdridge to work at the prison. See id. at 76–77.

of the maximum entry age requirement is to ensure that such employees have served at least twenty years when they are required to retire so that they may be entitled to full federal employee retirement benefits.

In 1986, Congress enacted the Federal Employees' Retirement System Act of 1986 (FERS), P.L. No. 99–335. The retirement benefits of any person hired as a federal employee for the first time after passage of FERS are determined exclusively by this Act's provisions. Since the passage of FERS, the BOP has considered all employment positions performed within the confines of a detention facility to be law enforcement positions and has required that a person initially be hired before he or she has reached age 35. The BOP states that the primary responsibility of all of its employees who work at federal penal institutions is to ensure that the inmates are detained, regardless of whether an employee regularly performs the duties of a guard or a secretary. As a result, when initially hired, all persons are required to complete and pass law enforcement training. Once they are hired, BOP employees are required to perform law enforcement functions when required to do so by the circumstances. All such employees are required to retire upon reaching their fifty-fifth birthday. The BOP has waived the maximum age entry requirement, but such instances have been limited to chaplains and medical doctors, who may not complete their professional training before reaching 35 years of age.

The magistrate held that under well-settled law, the maximum entry age and mandatory retirement age for law enforcement officials is an exception to the ADEA, citing *Patterson v. United States Postal Service*, 901 F.2d 927, 929–930 (11th Cir.1990), *Benford v. Frank*, 943 F.2d 609, 613 (6th Cir.1991), and 5 U.S.C. § 3307(d). Nevertheless, the magistrate declined to address Holdridge's argument that these authorities were inapposite, finding that Holdridge "lacks standing to complain, having failed to prove discrimination based on his age." Op. at 9.

The magistrate, applying the test developed for Title VII actions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), concluded that Holdridge failed to prove age discrimination. This test requires a plaintiff to establish a *prima facie* case by showing the following:

(1) that he was a member of a protected class; (2) that he applied for and was qualified for a job which the B.O.P. was seeking applicants; (3) that despite his qualifications he was rejected; and (4) that after his rejection the position remained open and the B.O.P. continued to seek applicants from persons with his qualifications.

The magistrate found that Holdridge was a member of a protected class, but that Holdridge failed to prove any other element of the *McDonnell Douglas* test.

Specifically, the magistrate found that Holdridge never applied for an employment position because he failed to submit a Form 171 application, rejecting Holdridge's argument that completing the application would have been futile because, even if he had applied, he would have been rejected on account of his age. Moreover, the magistrate found that Holdridge had not received federal competitive status as required by law. *See* 5 U.S.C. § 2102; 5 C.F.R. § 212.-301. Finally, the magistrate found that Holdridge failed to show that the BOP was seeking applicants, noting that when Holdridge contacted the BOP on March 11, 1988, the period for applying for foreman trainee positions had lapsed, and the positions had been filled.

## II. ANALYSIS

Holdridge raises a number of contentions on appeal. Essentially, Holdridge argues that the magistrate erred in applying the *McDonnell Douglas* test. Holdridge asserts that the magistrate should have required the BOP to show that it is exempt from the ADEA or show that its age restriction is a bona fide occupational qualification (BFOQ), permitted by § 623(f)(1) of the ADEA. In this appeal, this Court sits

as an appellate court. Hence, it will not disturb findings of fact unless clearly erroneous, but it will review conclusions of law *de novo.*

◼ First, Holdridge challenges the magistrate's finding that the warden had to fill a position from the list of best qualified applicants submitted by the local promotion board. Paragraph 8 of the magistrate's findings of fact states:

> In the case of a local vacancy notice, a set period of time is set during which applications may be submitted. Following expiration of the period, a local promotions board selects from the applications the best qualified applicants. From the list of best qualified applicants the selecting officer, the warden, must fill the position(s).

Holdridge asserts that this finding is clearly erroneous because 45 days after the promotion board issues its list of qualified applicants, the warden is no longer required to select applicants from that list. Holdridge's contention is without merit. The magistrate's finding need not address all possible circumstances under which a warden might select an applicant who does not appear on a promotion certificate. The mere fact that a promotion certificate may expire (in which case a warden may select an applicant who is not on the promotion certificate) does not render the magistrate's finding erroneous. In the circumstances of this case, the finding is correct. The warden selected applicants from the promotion board's certificate within 45 days of its execution.

◼ Second, Holdridge asserts that the magistrate erroneously applied the *McDonnell Douglas* test. In *McDonnell Douglas Corp. v. Green,* the Supreme Court formulated a test through which a plaintiff could make out a *prima facie* case of unlawful discrimination, and hence remain in court, even though that plaintiff could not produce any direct evidence of discrimination. This test allows a plaintiff to satisfy his initial burden of offering evidence adequate to create an inference that an employment decision was based on illegal grounds. Of course, the *McDonnell Douglas* test is unnecessary if a plaintiff produces direct evidence of discrimination. *See Guillory v. St. Landry Parish Police Jury,* 802 F.2d 822, 824 (5th Cir.1986).

Holdridge argues that the BOP's refusal to hire persons over the age of 35 constitutes direct evidence of discrimination. The trial testimony indicates that Marlow felt that he could not consider Holdridge for employment because he was 55 at the time he contacted Marlow. The magistrate explained that the maximum entry age of the BOP for law enforcement officers is 35. Congress has authorized federal agencies with law enforcement components to set a maximum entry age for law enforcement officers. For persons covered by the Civil Service Retirement System (CSRS), a "law enforcement officer" is defined as:

> an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States.... For the purposes of this paragraph, "detention" includes the duties of—
>
> (A) employees of the Bureau of Prisons ... whose duties in connection with individuals in detention suspected or convicted of offenses against the criminal laws of the United States ... require frequent ... direct contact with these individuals in their detention, direction, supervision, inspection, training, employment, care, transportation, or rehabilitation.

5 U.S.C. § 8331(20). *See* 5 U.S.C. § 3307(d). However, for persons covered by the Federal Employees Retirement System (FERS), 5 U.S.C. § 8401(17) defines "law enforcement officers" to be:

> (A) an employee, the duties of whose position—
>
> (i) are primarily—
>
> (I) the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States ... and
>
> (ii) are sufficiently rigorous that employment opportunities are required to be limited to young and physically vigorous individuals, as determined by the Director considering the recommendations of the employing agency....

*See* 5 U.S.C. § 3307(e). In enacting the 1986 FERS legislation, Congress included the "sufficiently rigorous" language to limit the number of jobs which would be classified as law enforcement officers. *See* S.Rep. No. 99-166, 99th Cong.2d Sess. 41, *reprinted in* 1986 U.S.C.C.A.N. 1405, 1446.

Department of Justice Order 1338.1A set the maximum entry age for law enforcement components of the Department of Justice, such as the BOP, at 35. The maximum age cutoff authorized under CSRS has been upheld as an exemption from the ADEA. *See Stewart v. Smith,* 673 F.2d 485 (D.C.Cir.1982). Holdridge contends that enactment of FERS narrowed the circumstances under which the BOP may classify employees as law enforcement officers and, thereby, set a maximum hiring age. He argues that the foreman trainee position cannot be classified as a law enforcement position under FERS.

This court concludes that the magistrate was not required to reach this dispute because the same employment decision would have been made even if no discriminatory considerations were present. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–245, 109 S.Ct. 1775, 1787–1788, 104 L.Ed.2d 268 (1989). Under *Hopkins,* Defendant can escape liability by showing, by a preponderance of the evidence, that Holdridge would not have been hired, even if the BOP's age restriction was unwarranted. It is plain from the magistrate's findings that the fact that the period for applying for the foreman trainee positions had lapsed, the fact that the positions were filled, the fact that Holdridge failed to complete an application, and the fact that he lacked competitive status preclude any recovery on his part. Therefore, the magistrate was not required to rule on Holdridge's argument that FERS prohibits the BOP from classifying foreman trainees as law enforcement positions.

■ Third, Holdridge asserts that the magistrate erred in holding that Plaintiff lacked standing to bring this claim. The magistrate declined to address the disputed interpretation of FERS, stating that "Plaintiff lack[ed] standing to complain, having failed to prove discrimination based on his age in March and April 1988." Op at 9.

Admittedly, the magistrate's use of the word "standing" was confusing in this situation. Because Holdridge complained that he was denied an employment opportunity because of his age, Holdridge was clearly a "person aggrieved" as used in the ADEA. *See* 29 U.S.C. § 626(c)(1). Holdridge, thus, had standing to bring this suit. Properly understood, however, the magistrate concluded that he need not address Holdridge's interpretation of FERS because Defendant successfully demonstrated that it did not discriminate on the basis of age. In substance, this complaint is little different from Holdridge's second point of error.

Fourth, Appellant argues that in applying the *McDonnell Douglas* test the magistrate erred in finding that the failure to file a formal application prevented Appellant from obtaining relief. The magistrate found that "the uncontested evidence shows that in order for a person with no qualified federal employment to apply for federal employment the person must have submitted a Form 171, either to the OPM or the B.O.P., and have been granted federal competitive status. *See* 5 U.S.C. § 2102; 5 C.F.R. § 212.301." However, Holdridge asserts that the evidence clearly demonstrated that, because of his age, submitting an application would have been futile. *See* TR. 253, 307–08.

■ This court notes as a preliminary matter that in *Walther v. Lone Star Gas Co.,* 952 F.2d 119 (5th Cir.1992), the Fifth Circuit held that once a "defendant has produced evidence of a nondiscriminatory reason for plaintiff's discharge, and plaintiff has had an opportunity to challenge that reason as pretextual, the trier of fact should proceed directly to the ultimate issue of whether the defendant intentionally discriminated against the plaintiff." *Id.* at 126. Moreover, the *Walther* court observed that once a case has been tried on the merits, the reviewing court need not address the sufficiency of the plaintiff's *prima facie* case, but may proceed to the ultimate question whether plaintiff produced sufficient evidence for a trier of fact

to conclude that discrimination occurred. *Id.* at 122–123. Hence, as discussed above, since Holdridge failed on the merits of his claim, this court need not explore the magistrate's analysis of the *prima facie* case.

 Although the Supreme Court noted in *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), that a person need not submit an application, if doing so would be "a useless act, serving only to confirm a discriminatee's knowledge that the job he wanted was unavailable to him," *id.* at 367, 97 S.Ct. at 1870, the fact that the application deadline had passed, that the foreman trainee positions had been filled, and that Holdridge had not obtained competitive status establish that Holdridge was not unlawfully discriminated against.

Fifth, Holdridge argues that the magistrate erred in denying injunctive and declaratory relief even though there was no job vacancy at the time Holdridge sought employment.[2] Holdridge cites *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), for the proposition that his case should not have been dismissed even though there were no vacancies. In *Thurston,* the district court dismissed the case because the plaintiffs could not make out a *prima facie* case since no vacancies existed. The Supreme Court reversed the district court, holding that establishing a *prima facie* case was unnecessary because the plaintiffs had presented direct evidence of discrimination. In *Thurston,* the plaintiffs produced direct evidence of discrimination; hence, dismissal of the action was improper. In this suit however, after trial on the merits, the magistrate determined that Holdridge was not hired for reasonable factors other than his age. Since the magistrate found that the BOP did not unlawfully discriminate against Holdridge, the magistrate did not abuse his discretion by deny-

ing injunctive and declaratory relief. *See generally Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Gladden v. Roach,* 864 F.2d 1196 (5th Cir. 1989).

Finally, Holdridge asserts that the magistrate erred in failing to determine whether the BOP was exempt from the ADEA or that its age policy was justified as a bona fide occupational qualification (BFOQ). As discussed above, the magistrate was not required to address this contention.

The judgment of the magistrate is AFFIRMED.

SO ORDERED.

---

**2.** In his Statement of Reversible Errors, Holdridge asserts that the magistrate erred in finding that there was no job vacancy when Holdridge sought employment. Holdridge's brief does not address this contention; neither will this court. Furthermore, the record clearly sup-

ports the magistrate's finding that the positions for the broom making shop at the Big Spring penitentiary were filled by March 8, 1988, three days before Holdridge contacted the BOP in search of employment.