**Geraldine GLOVER–DORSEY**
**Plaintiff,**

v.

**UNIVERSITY OF TEXAS MEDICAL**
**BRANCH AT GALVESTON,**
**TEXAS Defendant.**

**No. CIV. A. G–00–164.**

United States District Court,
S.D. Texas,
Galveston Division.

June 4, 2001.

Kevin Albert Murray, Attorney at Law, Houston, TX, for Geraldine Glover–Dorsey, plaintiffs.

Alison Ianthe Wong, Office of the Attorney General, Austin, TX, for University of Texas Medical Branch Galveston, defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Geraldine Glover–Dorsey, an African–American female, brings this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Now before the Court is Defendant's Motion for Summary Judgment. For reasons set forth below, Defendant's Motion is **DENIED.**

1. UTMB has several different "tracks," which a professor may follow. Among these are, or

## I. FACTUAL SUMMARY

Plaintiff began working for the Defendant University of Texas Medical Branch ("UTMB") in 1978 as an Assistant Professor in the School of Nursing ("SON"). After six years, however, Plaintiff had not met the SON's requirements for obtaining tenure. Thus, for reasons not germane to this dispute, Plaintiff requested and received a part-time appointment, which began in September 1984. Plaintiff remained a part-time faculty member until September 1, 1989, at which point she secured a full-time position as a Faculty Associate and Student Advocate in the SON's Office of Student Affairs. The SON maintains that it intended for this position to be temporary while Plaintiff met several remaining criteria for reinstatement as an Assistant Professor on the clinical track.[1] By the year 1997, Plaintiff had not yet achieved these goals.

In May 1997, however, the SON approved its new Guidelines for Promotion and Tenure. The guidelines included a new track, the Scholarship of Teaching/Education. The criteria for the Teaching/Education track differed from that of the other preexisting tracks; Plaintiff believed she could satisfy these new criteria. Accordingly, Plaintiff, on November 16, 1998, applied for a change in academic title, seeking an Assistant Professor position in the Teaching/Education track.

Plaintiff submitted her application to the Academic Appointments, Promotions, and Tenure Committee (the "Committee" or the "AAPT Committee"). The Committee evaluated Plaintiff based upon five categories of performance: (1) teaching competence, (2) dissemination of information, (3) service activities, (4) scholarship of application and (5) scholarship of discovery. Ultimately, the Committee unanimously ap-

were (1) the tenure track, (2) the clinical track and (3) the teaching/education track.

proved Plaintiff's request, with a condition that Plaintiff resolve several outstanding issues with the Dean of the SON.[2]

The Committee forwarded its recommendation to the Dean, who had the authority to make the final decision. Thus, the Dean undertook an independent evaluation of Plaintiff's application. In this effort, the Dean sought and obtained clarification of several issues from the Plaintiff and also received further input from faculty members whose opinions the Dean deemed of particular relevance. On July 8, 1999, after considering the information that the faculty Committee had evaluated, along with the newly obtained materials (much of which was negative), the Dean rejected Plaintiff's application. Six days later, on July 14, 1999, the Dean further informed Plaintiff that she would be reappointed on only a part-time basis beginning on September 1, 1999. Moreover, this part time reappointment terminated on December 31, 1999, and Plaintiff lost her job.

Plaintiff now maintains that each of these adverse actions, the failure to reinstate her as an Assistant Professor and the subsequent reduction to part-time and ensuing termination, were motivated by racial animus.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P.

56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### B. *Discrimination Claims*

██ In general, there are two ways a plaintiff can show she was a victim of

---

**2.** In a letter dated December 4, 1998, the Dean expressed specific concerns regarding Plaintiff's failure to attain one or more certifications from either Texas or national agencies. These certifications apparently served as a complete bar to Plaintiff attaining an Assistant Professorship prior to the creation of the Teaching/Education track. Although it seems that the certifications were not prerequisites for the new track, the Dean seemed concerned about Plaintiff's failure to attain them in any event. The Dean's concerns appear to have resolved into an overall problem with Plaintiff's initiative, rather than any specific need for the certifications.

intentional discrimination. "A plaintiff can prove discriminatory animus by direct evidence, or by an indirect or inferential method of proof." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995). If the plaintiff elects the former approach, the plaintiff must offer "direct" evidence of discrimination, defined as "evidence that, if believed, proves the fact of intentional discrimination without inference or presumption." *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir.1996). The clearest example of "direct evidence" of discrimination would be "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994); *see also Mooney*, 54 F.3d at 1217–18 (analyzing characteristics of direct evidence).

■ Alternatively, a plaintiff may elect to prove the fact of intentional discrimination via the indirect or inferential approach. The indirect approach is governed by the familiar, tripartite burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). However, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 617, 83 L.Ed.2d 523 (1985); *see also Brady v. Fort Bend County*, 145 F.3d 691, 711 (5th Cir.1998) (citing *Thurston*); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990) (same); *Ahrens v. Perot Sys. Corp.*, 39 F.Supp.2d 773, 780 (N.D.Tex.1999) (rejecting plaintiff's contention that she had stated a "direct evidence" case).

1. *Plaintiff's Failure to Promote Claim*

■ Plaintiff has offered what she terms direct evidence of racial discrimination. Plaintiff points the Court to various items including, for example, Defendant's failure to reinstate her Assistant Professorship despite the unanimous support of the faculty AAPT Committee, and Defendant's alleged imposition of additional requirements on Plaintiff not demanded of other professors. In general, Plaintiff's theory of the case, as suggested by the evidence, is that she enjoyed overwhelming support among the faculty and that Defendant, through the Dean of the SON, invidiously decided not to promote her because she is an African–American. Yet, however compelling one may perceive Plaintiff's evidence to be, it does not constitute direct evidence of racial discrimination. None "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Troupe*, 20 F.3d at 736. Rather, this evidence is circumstantial or indirect evidence of the type commonly encountered in the *McDonnell Douglas–Burdine* method of proving racial discrimination. The Court thus turns its attention to the burden shifting framework.

a. *The Tripartite Burden Shifting Framework*

■ At the first stage of the *McDonnell Douglas–Burdine* burden-shifting approach, a plaintiff must establish a prima facie case of race discrimination. *See McDonnell Douglas*, 411 U.S. at 801, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir.1996) (en banc). If the plaintiff makes out a prima facie case, a presump-

tion of discrimination arises, and the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747; *Rhodes,* 75 F.3d at 992–93.

■ If the defendant at this second stage of the *McDonnell Douglas–Burdine* analysis remains silent and fails to proffer a legitimate, nondiscriminatory reason for its action, there are two possible outcomes. If a reasonable fact-finder could not differ as to the existence of the facts constituting plaintiff's prima facie case, plaintiff will be entitled to judgment as a matter of law pursuant to either Fed.R.Civ.P. 50(a)(1) or 52(c). *See Hicks,* 509 U.S. at 509–510, 113 S.Ct. at 2748. But if reasonable minds could differ as to whether plaintiff has made out a prima facie case by a preponderance of the evidence, defendant is entitled to have the trier of fact decide that question. *See id.* Should the trier of fact find that plaintiff has indeed established his prima facie case by a preponderance of the evidence, it *must* render a verdict for the plaintiff, because, by definition, an unrebutted presumption mandates the finding of the fact presumed. *See id.* at 510, n. 3, 113 S.Ct. at 2748, n. 3.

■■ Obviously, the *McDonnell Douglas–Burdine* framework is designed to put a price on a defendant's silence at the second stage of the tripartite burden-shifting framework. Thus a defendant may well choose not to remain silent at this stage, and instead attempt to meet its burden of production by proffering a legitimate, nondiscriminatory reason for its ac-

tions. If the defendant does so, the presumption of discrimination is rebutted, and it drops from the case.[3] *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95; *Hicks,* 509 U.S. at 507, 511, 113 S.Ct. at 2749 (once rebutted, the presumption "simply drops out of the picture").

■ At the third stage of the burden-shifting framework, plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered nondiscriminatory reason is not true but instead a pretext for intentional discrimination. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1095; *see also Hicks,* 509 U.S. at 508, 113 S.Ct. at 2747. Although the *McDonnell Douglas–Burdine* framework shifts the burden of *production* between the plaintiff and defendant, it is crucial to recognize that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *see also Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747.

### i. *Plaintiff's Prima Facie Case*

■ To establish a prima facie case of racial discrimination, a plaintiff must show: (1) he belongs to a protected group, (2) he was qualified for the position held or sought, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class *or* he was treated less favorably than others similarly situated *or* otherwise show that he was subjected to adverse treatment due to

---

**3.** Of course, while the rebutted presumption drops from the case, the alleged state of affairs underlying the prima facie case remains in the case if accepted by the fact-finder. Thus the fact-finder is free to consider those facts, along with others, and draw reasonable

inferences from them in the course of making the ultimate determination of whether the plaintiff was the victim of unlawful intentional discrimination. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095, n. 10.

his race.[4] *See Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir. 1998); *Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246–47 (5th Cir.1985).

■ Defendant challenges only the second element—Plaintiff's qualifications. According to Defendant, an array of evidence indicates that Plaintiff was not fully qualified to serve as an Assistant Professor in the Teaching/Education track. In this regard, Defendant provides affidavits from several of Plaintiff's former colleagues, each of whom questions Plaintiff's ability to perform the necessary coordination and leadership activities required of a professor engaged principally in teaching.[5] In response, Plaintiff offers affidavit testimony from several former members of the AAPT Committee stating that she was ful-

ly qualified to serve in the sought-after position.

Without discounting Defendant's evidence, the Court notes that this evidence is better considered as a justification for the adverse action taken, which of course will bear on whether discrimination occurred. *Cf. Rubinstein v. Administrators of Tulane Educ. Fund,* 218 F.3d 392, 399–400 (5th Cir.2000) (analyzing evidence that a professor did not receive merit raises because of poor performance as bearing on a legitimate justification rather than on the threshold qualification), *cert. denied,* —— U.S. ——, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001). Unlike a typical case in which a defendant argues the plaintiff was unqualified, no objectively verifiable impediment to this Plaintiff filling the Assistant Profes-

---

**4.** The disjunctive "or" in the fourth element of the prima facie case is a crucial component, yet all too easily elided. Indeed, some recent Fifth Circuit cases have stated the fourth element in such a way that a plaintiff cannot make out a prima facie case unless he can show that he was replaced by a person who is not a member of the protected class to which plaintiff belongs. *See Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 n. 7 (5th Cir.1997) (recognizing conflict between earlier and later cases with respect to wording of the fourth element of plaintiff's prima facie case); *compare Singh v. Shoney's Inc.,* 64 F.3d 217, 219 (5th Cir.1995) (concluding that replacement by a member of the same protected class as plaintiff precludes establishment of a prima facie case) *with Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246–47 (5th Cir. 1985) (recognizing that "the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated [by] discriminatory reasons"). Absent an en banc Fifth Circuit or Supreme Court opinion to the contrary, the earlier, less restrictive interpretation of the fourth element of the prima facie case is the binding precedent within this Circuit. *See United States v. Texas Tech Univ.,* 171 F.3d 279, 279 n. 9 (5th Cir.1999) ("Where two panel decisions conflict, the prior decision constitutes the binding precedent"), *cert.*

*denied,* 530 U.S. 1202, 120 S.Ct. 2194, 147 L.Ed.2d 231 (2000); *United States v. Gray,* 751 F.2d 733 (5th Cir.1985) ("Under our court rules any such inconsistency must be resolved in favor of the earlier line, absent intervening decisions by the Supreme Court"); *Nieto,* 108 F.3d at 621 n. 7 (noting that insofar as the district court's decision was based on recent but conflicting decisions interpreting this element of the prima facie case, "such conclusion was not supported by the controlling authority in this circuit").

**5.** Defendant goes so far as to question Plaintiff's lack of initiative in another respect. According to the affidavit of M. Kay Sandor, Plaintiff "did not or could not become proficient with computers. As a result course correspondence sent to other team members by email had to be printed and then placed in Ms. Dorsey's mailbox." In the Court's view such evidence does not suggest a lack of initiative, but rather a wizened disposition—one that recognizes the many ways by which the internet has become a Mephistophelian scourge upon our populace, laying waste to personal interactions of every ilk. As such, with respect to email and the internet, the oft quoted admonition that "the idle mind is the devils workshop" has been transmogrified into a societal situation in which the "devil's workshop occupies one's mind."

sor position exists.[6] Rather, Defendant introduces a qualitative analysis of Plaintiff's alleged shortcomings. At the summary judgment stage, the Court cannot weigh the evidence, but must accept Plaintiff's version of the facts if such is prima facie sufficient to establish the requisite qualifications. Here, Plaintiff has presented enough evidence to carry her prima facie burden.

### ii. *Defendant's Nondiscriminatory Justifications*

 Defendant's burden of producing evidence in support of a legitimate, nondiscriminatory reason underlying its action is "extremely light." *See Thornton v. Neiman Marcus,* 850 F.Supp. 538, 543 (N.D.Tex.1994). A defendant may satisfy that burden merely by producing any evidence, "which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *See Hicks,* 509 U.S. at 509, 113 S.Ct. at 2748 (emphasis in original). The "defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Indeed, the defendant can even discharge his burden of production at this stage by proffering an *illegal* justification. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993) (holding that defendant had proffered a "legitimate" nondiscriminatory justification sufficient to satisfy his burden under the second stage of the *McDonnell Douglas–Burdine* framework, even though the proffered justification was found to violate another body of law, § 510 of the Age Discrimination in Employment Act of 1967).

 Defendant has submitted competent evidence indicating that it did not promote Plaintiff because of: (1) concerns about Plaintiff's qualifications; (2) Plaintiff's failure to become certified as a Nurse Practitioner or attain recognition as an Advanced Practice Nurse by the Texas State Board of Nursing Examiners; and (3) a lack of support from Plaintiff's last supervisor and the Associate Dean of the Teaching/Education track. This evidence, if believed by the trier of fact, would permit the inference that the adverse action was motivated by a nondiscriminatory reason. Consequently, the Court finds that Defendant has carried its burden of production at the second stage of the *McDonnell Douglas–Burdine* framework. The presumption of discrimination created by Plaintiff's prima facie case stands rebutted, and thus disappears from the case. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094–95; *Hicks,* 509 U.S. at 507, 511, 113 S.Ct. at 2747, 2749.

### iii. *Circumstantial Evidence of Discrimination*

 The third stage of the *McDonnell Douglas–Burdine* framework is commonly referred to as the "pretext stage," an unfortunate and potentially misleading label. At this stage the plaintiff, having lost the benefits of the presumption of discrimination, is given a "full and fair opportunity to demonstrate" that defendant's proffered nondiscriminatory reason is not true but instead a pretext for intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see also Hicks,* 509 U.S. at 508, 113 S.Ct. at 2748. The label "pretext stage," and other shorthand references to "pretexts," are potentially misleading insofar as they suggest that the plaintiff, by

---

**6.** For example, Plaintiff previously could not, under established SON rules, obtain a Clinical track position absent certain certifications. If Plaintiff had sued for this denial, she would likely have been unable to make out a prima facie case and summary judgment would have been appropriate.

demonstrating the simple falsity of the defendant's proffered nondiscriminatory reason, has necessarily discharged his ultimate burden of persuasion: demonstrating that, more likely than not, he was a victim of unlawful intentional discrimination. In *Hicks,* the majority chided the dissent for conflating the term "pretext," understood to mean mere falsity of the employer's justification, with the more precise phrase, "pretext for discrimination." *See Hicks,* 509 U.S. at 513–14, 113 S.Ct. at 2750–51. As the Court explained, "a reason cannot be proved to be 'a pretext for *discrimination* ' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* at 513, 113 S.Ct. at 2752. (emphasis in original).

■■■■ The Fifth Circuit adopted the teachings of *Hicks,* and held, in an en banc decision, that for a plaintiff to withstand a motion for summary judgment, a two part test must be satisfied. The plaintiff must produce competent evidence which (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer, and (2) creates a reasonable inference that discrimination was a "determinative factor" in the actions of which plaintiff complains. *See Rhodes,* 75 F.3d at 994 (en banc); *see also Casarez v. Burlington N./Santa Fe Co.,* 193 F.3d 334, 337 (5th Cir.1999)(citing the two-prong *Rhodes* test). This rule recognizes that, in all cases, a plaintiff must prove that discrimination caused the adverse employment decision. However, a plaintiff may, in most cases, carry her burden on both prongs of this test by introducing sufficient summary judgment evidence tending to disprove a defendant's proffered justifications. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146–47, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000); *Auguster v. Vermilion Parish Sch. Bd.,* 249 F.3d 400, 402–03 (5th Cir.2001)

(citing *Reeves* ); *Vadie v. Mississippi State Univ.,* 218 F.3d 365, 373 n. 23 (5th Cir.2000) (explaining how the Fifth Circuit's *Rhodes* opinion remains consistent with the Supreme Court's *Reeves* opinion), *cert. denied,* —— U.S. ——, 121 S.Ct. 1092, 148 L.Ed.2d 966 (2001). Thus, a plaintiff's evidence of falsity, combined with her prima facie case, "may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148, 120 S.Ct. at 2109.

■■■ As outlined above, Defendant articulates three separate reasons why Plaintiff did not receive the sought-after position. First, Defendant argues that it had "strong concerns over her qualifications." Second, Defendant questions Plaintiff's failure to obtain certain certifications. Finally, Defendant points to the lack of support from key faculty, namely Plaintiff's last supervisor and the Associate Dean of the Education/Teaching track.

With respect to Defendant's first concern, qualifications, Plaintiff introduces evidence that, if believed, refutes Defendant's justification. First, Plaintiff provides testimony from several former colleagues familiar with the requirements for the position she sought, who state that Plaintiff was amply qualified for the Assistant Professorship. Second, Plaintiff points to the unanimous support she received from the AAPT Committee. However, this support, although unanimous, seems to have been qualified, in that the Committee requested that Plaintiff resolve several outstanding issues with the Dean of the SON. Even discounting Plaintiff's second piece of evidence, however, Plaintiff has introduced substantial evidence that she was qualified for the Assistant Professor position.

By letter dated July 8, 1999, Defendant stated that Plaintiff's lack of certifications was its "primary" reason for denying the

change of position. This reflects Defendant's second proffered justification. However, Plaintiff introduces evidence that such certifications were unnecessary. This evidence suggests that other Assistant Professors in the SON similarly lack these qualifications. For these other professors, such "shortcomings" have not been fatal. In essence, Plaintiff suggests that Defendant has proffered her lack of certifications as an excuse to justify its discrimination.

Finally, Defendant points to the lack of support from several key faculty members. However, as Plaintiff responds, this stands in rather stark juxtaposition with the support she received from a unanimous faculty Committee.

At their core, all of Defendant's justifications basically address whether Plaintiff was qualified for the position of Assistant Professor. The nomenclature Defendant attaches to its three reasons is not controlling. Instead, the Court is faced with a situation in which the Defendant contends that Plaintiff did not present a compelling enough background to merit the sought after job. Plaintiff introduces evidence to the contrary. This evidence tends to show that "the employer's proffered explanation is unworthy of credence." *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1089. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's Failure to Promote Claim is **DENIED**.

### 2. *Plaintiff's Termination Claim*

 Plaintiff also advances a separate claim stemming from her termination, which she also alleges was motivated by racial prejudices. The same *McDonnell Douglas–Burdine* burden-shifting scheme discussed above applies to this claim. Unlike on the failure to promote claim, Defendant does not attack Plaintiff's prima facie case on the termination claim. And clearly, any efforts to claim that Plaintiff was not qualified for the Faculty Associate job she had been performing for several years would be unavailing. Instead, Defendant argues that Plaintiff lost her position with the SON because of a budget driven reduction-in-force ("RIF").

In response, Plaintiff, does not attack the overall validity of the RIF. Nor does Plaintiff introduce any evidence suggesting that Plaintiff's inclusion in the RIF was racially motivated. Truly, Plaintiff's entire response to the Defendant's RIF justification is, at best, discombobulated. As outlined above, a plaintiff cannot merely rely on her prima facie case once a defendant articulates a legitimate reason for an adverse employment decision. *See Hicks*, 509 U.S. at 508, 113 S.Ct. at 2748. Here, Defendant points to a RIF, which affected not only Plaintiff, but also several white employees. Plaintiff must therefore introduce substantial evidence discrediting Defendant's proffered justification. But Plaintiff has utterly failed to explicate how any evidence supports a finding of pretext, and thus possible discrimination.

Nonetheless, the Court independently concludes that sufficient evidence has been presented by way of Plaintiff's Response to ward off summary judgment. In this respect, the Court points out the troubling proximity of Defendant's notification of the RIF just six days after Plaintiff's request for reappointment as an Assistant Professor was denied. Further, as Defendant anticipated in its Motion, Plaintiff does have a plausible argument that had she not been discriminated against, as alleged, in the denial of an Assistant Professorship, she would not of been RIFFED. While Defendant points to several Assistant Professors who were RIFFED, it seems fair to infer that employees are not often RIFFED immediately after being promoted. Of course, the first argument may be

explained as coincidence, and the second may ultimately prove fallacious, but sufficient evidence exists in the record to allow Plaintiff's termination claim to go forward. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's termination claim is **DENIED**.

### III. CONCLUSION

As set forth in more detail above, Defendant's Motion for Summary Judgment is **DENIED**. Plaintiff has presented just enough evidence to avoid summary judgment. However, the Court notes that it does not perceive, on the record before it, that Plaintiff has a particularly strong case from an evidentiary standpoint. Academia is an irregular world, and although Plaintiff may have been passed over for highly subjective reasons, this does not mean that Plaintiff has much hope of ultimately persuading the trier of fact that discrimination in fact caused the adverse actions. Indeed, this Court has steadfastly avoided the micro-management of medical school and university faculty decisions that this sort of litigation precisely invites or second guessing based merely upon the Court's preference that the matter at issue might have been resolved differently. Thus, today, the Court *only* rules that this matter should *for now* proceed. However, the Court *strongly* suggests that both parties approach the remainder of this case with a view toward reaching a realistic settlement of this matter, rather than unduly expending both public and private resources on further litigation that could be better utilized to provide fair and equitable closure for a long-time employee of the Defendant. **IT IS SO ORDERED.**