TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-99-00878-CV






The City of Austin Police Department, Appellant



v.



Arthur Brown; Ron Blackmore; Edwin Booth; Janis Dickerson; Karen Duncan; Gary

Duty; Robert Allen Hasselman; David Koschel; George Moxley; Paul Okruhlik;

Michael Rech; Jeff Rodman; and John Walenta, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 95-12194, HONORABLE ERNEST GARCIA, JUDGE PRESIDING 







 A jury found for appellees, thirteen current and former Austin Police Department
officers, on their age discrimination claims against appellant, the City of Austin Police Department
("APD"), based upon APD's decision to institute a policy that the jury determined to be a seniority
system APD adopted for the purpose of intentional age discrimination. The jury awarded damages,
and the court rendered judgment and, in a later hearing, awarded appellees attorney's fees. APD
appeals the trial court's judgment. We will reverse the judgment of the trial court and remand for
a new trial.


BACKGROUND


 Austin police officers typically serve as patrol officers or in specialized assignments. 
Although specialized assignments entail some of the same duties as patrol duty, they often have a
specific focus and include assignments to the warrants divisions, D.A.R.E. (Drug Abuse Resistance
Education) unit, canine unit, traffic unit, motorcycle unit, horse-mounted unit, narcotics unit, and
criminal intelligence unit. Whether an officer serves as a patrol officer or in a specialized
assignment, he or she has identical rank, pay classifications, job benefits, and promotional
opportunities.

 In 1979, APD adopted the first of several policies governing how an officer could
apply for a specialized assignment, the criteria for serving in a specialized assignment, how long an
officer could hold such an assignment before being required to rotate back to patrol duty, and how
long an officer had to serve on patrol duty before becoming eligible to apply for another specialized
assignment. The initial APD policy allowed an officer to serve for three years in a specialized
assignment but required officers to return to patrol duty for twelve months before becoming eligible
for another specialized assignment. Later that year, APD amended the policy by granting the APD
division commander discretion to retain senior officers in a specialized assignment beyond the three
year period based on job performance. 

 In 1990, APD again amended its specialized assignment policy, allowing an officer
to apply for an extension of a specialized assignment when a transfer would not be in the best interest
of the department. The 1990 amendments also implemented an annual review of officer
performance, after which a reviewing commander had discretion to reassign an officer in a
specialized assignment to patrol or retain the officer in the special assignment.

 By the mid-1990s, extensions of police officers' specialized assignments were
frequent; consequently, officers were holding their respective assignments longer, resulting in fewer
opportunities for other officers to rotate into specialized assignments. In 1993, Assistant Chief Ray
Sanders requested a committee be formed to modify APD's specialized assignment policy. Sanders
appointed Commander Cecil Huff as chairman of the committee and indicated that he wanted the
committee to ensure that the selection process for specialized assignments was fair and to review the
appeals process for officers who were not selected.

 The committee produced a draft of a new policy but could not reach a consensus on
how long an officer could stay in a specialized assignment before being required to transfer. 
Dissatisfied with the draft because it contained no such time limits, Sanders met with the committee
to discuss the policy; still, it reached no consensus on time limits. Finally, Huff formed a second
committee comprised of different members. The second committee produced another draft. APD
executive staff considered the second committee's recommendations and created General Order 712
("Policy 712"). Policy 712 imposed a five year cap on specialized assignments, removed any
discretion which might extend an officer's assignment beyond five years, and established a rotation
policy requiring officers who had served in a specialized assignment to return to patrol duty for at
least three years before serving in another specialized assignment. The policy provided that the most
tenured personnel would be rotated first. Policy 712 took effect in February 1994.

 After APD adopted Policy 712, twenty-two plaintiffs brought suit claiming age
discrimination. Eight plaintiffs were non suited, and an additional plaintiff was dismissed by
agreement. When the trial commenced, the thirteen remaining plaintiffs proceeded on their claim
of direct and intentional age discrimination resulting from APD's adoption of Policy 712. They
further asserted at trial that the assignment and transfer policy in effect constituted a seniority system. 
Two of the thirteen plaintiffs also asserted retaliation claims. The plaintiffs alleged that the transfer
policy had a disparate impact on them but did not pursue that claim at trial.

 A jury found for all thirteen plaintiffs on the theory of age discrimination and against
the two plaintiffs who alleged retaliation. At the conclusion of the jury trial, the trial court held a
hearing, received evidence, and awarded attorney's fees to the prevailing parties.

 APD appeals the trial court's judgment, contending that appellees failed to prove an
essential element of their claim entitling them to judgment, arguing that there is legally or factually
insufficient evidence to support the jury's finding that the adoption of Policy 712 constituted
intentional age discrimination, and asserting that the award of damages and attorney's fees was
improper.


DISCUSSION


 In its first issue, APD argues that the district court erred by rendering judgment for
appellees because they failed to obtain a jury finding that they suffered any "adverse employment
action" at the hands of APD, focusing on appellees' complaints of unwanted transfers under Policy
712. APD objected to the omission of this element at trial, preserving the issue for appeal, and
requests that we reverse and render judgment on behalf of APD. APD relies upon the McDonnell
Douglas method of proof in support of its position. See McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973). In the alternative, APD requests that we remand the cause for a new trial on the
basis that, even if found, evidence that the policy required transfer and lateral rotation is legally and
factually insufficient to prove that the officers suffered any adverse employment action through
application of the policy.


Standards of Review

 We review a district court's submission of controlling issues de novo. Continental
Cas. Co. v. Street, 379 S.W.2d 648, 651 (Tex. 1964); see also W. Wendell Hall, Standards of Review
in Texas, 34 St. Mary's L. J. 1, 124 (2002) ("[W]hen the complaint alleges that an element of a
theory has been omitted in the questions or instructions--either because the court believed that it was
established as a matter of law or an element of the theory of recovery was omitted--the appropriate
standard of review should be de novo.") (citing State Dep't of Pub. Highways v. Payne, 838 S.W.2d
235, 240-41 (Tex. 1992)).

 To bring a legal sufficiency challenge, the appellant must demonstrate that there is
no evidence to support the adverse finding. We must assess all the evidence in the light most
favorable to the prevailing party, indulging every reasonable inference in favor of the judgment. 
Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). We will
uphold the finding if more than a scintilla of evidence supports it. Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995). When reviewing a factual sufficiency challenge to a matter on
which the prevailing party had the burden of proof, we may reverse the judgment only if the
challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so
weak as to make the judgment clearly wrong and manifestly unjust. Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).


Jury Questions

 The jury was asked to answer the following questions: 


Question No. 1: Was the City of Austin's Police Department's decision to adopt
General Order No. 712, a decision to adopt a seniority system to
intentionally discriminate on the basis of age?


 To establish an intent to discriminate the plaintiffs must have
proved that any reason given by the City of Austin's Police
Department for the decision to adopt General Order No. 712 was
a subterfuge, a pretext or cover up and that illegal age
discrimination was the true reason for the decision to adopt
General Order No. 712.


Answer: Yes


* * * *



Question No. 3: As to each of the plaintiffs named below, do you find that the
Austin Police Department would have adopted General Order No.
712 even if age discrimination had not been an impermissible
motivating factor?


Answer: No [as to each named plaintiff]


Question No. 4: What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate each officer named below for damages, if
any, that resulted from the discrimination you found under
Question No. 1. . . . ?


 Consider the elements of damages listed below and none other
. . . . Compensatory damages [defined, including emotional pain,
inconvenience, mental anguish, loss of enjoyment of life, other
nonpecuniary damages]


Answer: [Dollar amount awarded for each named plaintiff]



 Thus, the jury found that APD adopted Policy 712 as a seniority system, that it did
so in order to intentionally discriminate on the basis of age, that any other reason given was a
pretext or cover up, and that age discrimination was the true reason for the decision; the jury failed
to find as to each plaintiff that APD would have adopted Policy 712 if age discrimination had not
been a motivating factor. It awarded each plaintiff monetary compensation for the discrimination. 
 Appellants do not expressly challenge the finding that Policy 712 was a seniority system. 

 We must decide whether, in addition, the officers were also required to prove that
they suffered an "adverse employment action"--in other words, whether application of the policy
constituted an employment practice materially adverse to them that caused them injury.


Relevant Statutes

 In asserting their age discrimination claims, appellees alleged violations of the Texas
Commission on Human Rights Act ("the Act"). (1) Tex. Lab. Code Ann. §§ 21.001-.306 (West 1996
& Supp. 2003). The relevant statutes provide as follows:


§ 21.051. Discrimination by Employer


An employer commits an unlawful employment practice if because of . . . age the
employer:


 (1) . . . discriminates in any . . . manner against an individual in connection
with . . . the terms, conditions, or privileges of employment; or


 (2) limits, segregates, or classifies an employee . . . in a manner that would
deprive or tend to deprive an individual of any employment
opportunity. . . . 



§ 21.102. Bona Fide Employee Benefit Plan; Production Measurement System



 [A]n employer does not commit an unlawful employment practice by applying
. . . different terms, conditions, or privileges of employment under: 

 
 a bona fide seniority system . . . 
 




§ 21.125. Clarifying Prohibition Against Impermissible Consideration of Race, 
Color, Sex, National Origin, Religion, Age, or Disability in 
Employment Practices


(a) [A]n unlawful employment practice is established when the complainant
demonstrates that . . . age . . . was a motivating factor for an employment
practice, even if other factors also motivated the practice, unless . . . age . . . is
combined with objective job-related factors to attain diversity in the employer's
work force.



§ 21.127. Expansion of Rights to Challenge Discriminatory Seniority Systems


With respect to a seniority system adopted for an intentionally discriminatory purpose
in violation of this chapter, . . . an unlawful employment practice occurs when: 



 
 the seniority system is adopted; 

 an individual becomes subject to the system; or 

 an individual is injured by the application of the system . . . . 
 


 


Tex. Lab. Code Ann. §§ 21.051, .102(a), .125(a), .127 (West 1996 & Supp. 2003).

 The legislature drafted the Act to "correlat[e] state law with federal law in the area
of discrimination in employment." Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 485 (Tex.
1991). The relevant parts of the Act are patterned after Title VII of the federal Civil Rights Act of
1964. Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 474 (Tex. 2001). Consequently, Texas
courts look to the pertinent federal decisional law to resolve discrimination claims. Specialty
Realtors v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996); Stinnett v. Williamson County Sheriff's
Dep't, 858 S.W.2d 573, 576 (Tex. App.--Austin 1993, writ denied).


Methods of Proof

 Both federal and state discrimination statutes prohibit an employer from intentionally
discriminating against an employee with respect to material terms of employment on the basis of age. 
Jaso v. Travis County Juvenile Bd., 6 S.W.3d 324, 328 (Tex. App.--Austin 1999, no pet.); see also
29 U.S.C.A. § 623(a) (West 2002); Tex. Lab. Code Ann. § 21.051. In a disparate treatment case,
an employer treats some people less favorably than others based upon a prohibited trait. 
International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977). In a
disparate impact case, an employer may be liable where a facially neutral practice has a
disproportionate impact on a protected group. Griggs v. Duke Power Co., 401 U.S. 424, 428, 432-33
(1971).

 A plaintiff who sues an employer under either the federal or Texas statutes can prove
discrimination by different methods of proof. Courts recognize two types of employment
discrimination cases. Quantum, 47 S.W.3d at 476. The first is the "pretext" case, demonstrated by
indirect or inferential proof, in which the plaintiff's ultimate goal is to show that the employer's
stated reason for its adverse action against the employee was a pretext for discrimination. Id.; Texas
Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); McDonnell Douglas, 411 U.S.
at 802-05. The second type of case is the "mixed-motive" case, in which the plaintiff can show by
direct evidence the employer's discriminatory animus in making the employment decision with
respect to the employee. Quantum, 47 S.W.3d at 476. Once shown, the employer must then prove
that it would have made the same decision for legitimate reasons even without the discriminatory
motive. Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989). How a case is classified
depends upon whether there is direct evidence of an illegitimate criterion. Quantum, 47 S.W.3d at
476. In either event, the case arises from an employment decision or practice adversely affecting the
employee. 

 Discrimination can be shown indirectly through circumstantial evidence by following
the "pretext" method of proof. See McDonnell Douglas, 411 U.S. at 802-05. In McDonnell
Douglas, the United States Supreme Court set out the order and allocation of proof to be followed
in a pretext case. Quantum, 47 S.W.3d at 477. The burden shifting framework requires a plaintiff
to establish a prima facie case of discrimination by showing that he or she was: (1) within the
protected age group; (2) adversely affected or suffered an adverse employment action; and (3)
similarly situated non-protected class members were not treated similarly. McDonnell Douglas, 411
U.S. at 801-03; see also Jaso, 6 S.W.3d at 328. Once the plaintiff makes a prima facie showing of
discrimination, the burden of production shifts to the employer to articulate a legitimate,
nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. 
If the employer meets this burden, the plaintiff bears the burden of persuasion to show that the
employer's proffered reasons are a mere pretext for discrimination. Id. The method of proof set
forth in McDonnell Douglas ensures that the "plaintiff has his day in court despite the unavailability
of direct evidence." Mooney v. Aramco Services Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (quoting
Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)). The burden of persuasion
remains with the plaintiff. 

 The prima facie case method established in McDonnell Douglas was never intended
to be rigid, mechanized, or ritualistic. It is merely a sensible, orderly way to evaluate the evidence
in light of common experience as it bears on the critical question of discrimination. United States
Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1982) (citing Furnco Constr. Corp. v.
Waters, 438 U.S. 567, 577 (1978)). Establishing a prima facie case creates a rebuttable presumption
that the employer unlawfully discriminated against the employee. In rebuttal, the employer must
produce admissible evidence of a legitimate reason for the employment decision. When the
defendant fails to persuade the trial court to dismiss the action or render judgment for lack of a prima
facie case, and responds with proof of the employer's reasons for the decision, the presumption has
been rebutted and drops from the case. At that point, whether the plaintiff made a prima facie case
of discrimination is no longer relevant. Id.; see also Walther v. Lone Star Gas Co., 952 F.2d 119,
122 (5th Cir. 1992). When the defendant has done everything that would be required had the
plaintiff properly made out a prima facie case, whether the plaintiff actually did so is no longer
relevant. Aikens, 460 U.S. at 715. The trier of fact should proceed directly to the ultimate issue of
whether the defendant intentionally discriminated against the plaintiff; an affirmative finding will
be reviewed on appeal on the basis of whether the plaintiff produced sufficient evidence for the jury
to find discrimination had occurred. The question of whether a plaintiff made out a prima facie case
of discrimination has no place in the jury room. See Walther, 952 F.2d at 126-27.

 If, on the other hand, a plaintiff produces direct evidence of discrimination, the
McDonnell Douglas framework of proof does not apply. See Thurston, 469 U.S. at 119. When an
employee presents direct evidence of discrimination against the employee, but the employer asserts
that the same adverse employment decision would have been made regardless of discrimination, the
Price Waterhouse mixed-motive theory applies. Mooney, 54 F.3d at 1216; see also Price
Waterhouse, 490 U.S. at 244-45 ("[O]nce a plaintiff in a Title VII case shows that gender played a
motivating part in an employment decision, the defendant may avoid a finding of liability only by
proving that it would have made the same decision even if it had not allowed gender to play such a
role."). Unlike McDonnell Douglas, which simply involves a shifting of the burden of production,
Price Waterhouse involves shifting the burden of persuasion to the defendant. Mooney, 54 F.3d at
1216-17. In other words, under Price Waterhouse, once a plaintiff presents direct evidence of
discrimination, the burden of proof shifts to the employer to show the same employment decision
would have been made regardless of the discriminatory animus. (2) Id. at 1217; see also Michael J.
Zimmer, Chaos or Coherence: Individual Disparate Treatment Discrimination and the ADEA, 51
Mercer L. Rev. 693, 695 (2000). If the employer fails to carry this burden, the plaintiff prevails.

 Prior case law and the Price Waterhouse opinion make clear that the mixed-motives
and pretext methods require different elements of proof. The fundamental prerequisite to the mixed-motives instruction is the presentation of direct evidence of discrimination. Mooney, 54 F.3d at
1217. In Price Waterhouse, the plaintiff's candidacy for partnership was put on hold, and she
brought a Title VII sex-discrimination action. Price Waterhouse, 490 U.S. at 233. The plaintiff
produced evidence in the form of various partners' statements that she was "macho,"
"overcompensated for being a woman," and should "take a course at charm school" and "walk more
femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and
wear jewelry." Id. at 235. Without expressly defining "direct evidence," (3) a majority of the Court
held that this evidence was sufficient to shift the burden of persuasion to Price Waterhouse to prove
that it would have made the same employment decision regardless of the plaintiff's gender. See id.
at 244-45; id. at 261 (White, J., concurring); id. at 279 (O'Connor, J., concurring).

 The United States Court of Appeals for the Fifth Circuit has expressly defined "direct
evidence" as "evidence which, if believed, proves the fact [of discriminatory animus] without
inference or presumption." See Mooney, 54 F.3d at 1217 (citing Brown v. East Miss. Elec. Power
Ass'n, 989 F.2d 858 (5th Cir. 1993)). In Mooney, employees brought a class action against their
employer alleging unlawful termination in violation of the Age Discrimination in Employment Act. 
Id. at 1211. The plaintiffs produced evidence of allegedly discriminatory statements made by their
supervisors:


Thim's supervisor said he wanted to replace Thim with a "younger and cheaper"
engineer. Olson's supervisor said it "must have been your age." Williams's
supervisor declared that plaintiff would have a "good case of age discrimination." 
Mooney heard Dan Christy--the man who recommended his discharge--tell a
younger engineer that Aramco was "going to get rid of the older employees with the
higher salaries."



Id. at 1218. The Fifth Circuit ultimately concluded that these statements failed to constitute Price
Waterhouse direct evidence because the plaintiffs had failed to show that "the employer actually
relied on [the forbidden factor] in making its decision." Id. (quoting Langley v. Jackson State Univ.,
14 F.3d 1070, 1075 (5th Cir. 1994)). The court reasoned that two of the statements were "primarily
indicative of a desire to save money by employing persons at lower pay," while the other two
statements "merely constitute[d] speculation as to possible discrimination in the termination of Trial
Plaintiffs." Id.

 Obviously, not all comments reflecting a discriminatory attitude constitute direct
evidence. The United States Court of Appeals for the Eighth Circuit has distinguished


comments which demonstrate a "discriminatory animus in the decisional process" or
those uttered by individuals closely involved in employment decisions, from "stray
remarks in the workplace," "statements by nondecisionmakers," or "statements by
decisionmakers unrelated to the decisional process." While evidence of the former
type of remark might be sufficient to entitle a plaintiff to a Price Waterhouse
instruction, we reject the latter as insufficient.



Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448-49 (8th Cir. 1993); see also Jaso, 6 S.W.3d
at 330-31 ("Mere stray marks, without more, are insufficient to establish a claim of age
discrimination."); Jeff Morneau, Too Good, Too Bad: "Overqualified" Older Workers, 22 W. New
Eng. L. Rev. 45, 54-57 (2000). "The clearest example of 'direct evidence' of discrimination would
be 'evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant
or its agents.'" Glover-Dorsey v. University of Tex. Med. Branch, 147 F. Supp. 2d 656, 662 (S.D.
Tex. 2001) (quoting Troup v. May Dept. Stores Co., 20 F.3d 734, 736 (7th Cir. 1994)).

 There are, as might be expected, few reported cases of direct evidence discrimination,
and fewer yet involving a seniority system. Appellees direct us to the TWA case, which involved a
facially discriminatory system, unlike the one at issue here. See Trans World Airlines, Inc. v.
Thurston, 469 U.S. 111 (1985). They rely particularly on Lorance, involving the limitations period
for a facially neutral but allegedly intentionally discriminatory seniority system which, upon
adoption, immediately had a negative disparate impact on the female employees because it
unfavorably altered their contractual seniority rights. See Lorance v. AT&T Technologies, Inc., 490
U.S. 900 (1989). Policy 712 did not immediately affect appellees' seniority rights in that manner,
and appellees did not proceed on a disparate impact theory. Our research reveals no case exactly on
point.


Direct or Indirect Evidence?

 To classify the cause before us, we must first decide whether appellees introduced
direct evidence of age discrimination. Appellees point to statements by Assistant Police Chiefs Ray
Sanders and Reuben Lopez as direct evidence of discriminatory animus. In response to inquiries
about why time limits on specialized assignments were necessary, Sanders answered, "We need to
move some of these older officers out and give these younger guys a chance at these jobs"; "We want
to get you old guys out of there and get some young guys in"; and "We're trying to get rid of you old
guys." Lopez commented that the time limits were necessary in order "to have some new blood" in
specialized assignments. Because these statements by one closely involved in decision making go
directly to the adoption of the policy, they are proof of discriminatory animus without inference or
presumption. See Mooney, 54 F.3d at 1217.

 Appellant argues, as it did at trial, that any comments about "young" or "old" officers
refer to the time or experience an officer has in a position, not to an officer's chronological age. 
Even assuming such references sometimes carry that connotation, the statements themselves do not
reveal such an alternative meaning, and the jury found otherwise. Unlike the statements in the
Mooney case, which indicate that the declarant is primarily concerned with saving money, these
statements indicate that "older" officers are being moved in order to be replaced by "younger"
officers. Age is the only factor articulated in response to the officers' inquiries about the reason for
time limits on specialized assignments; therefore, the statements suggest that "the employer actually
relied on [the officers' age] in making its decision." See id. at 1218. Furthermore, Sanders's and
Lopez's statements are not speculative; they identify the reason for the time limits with certainty. 
See id. at 1218-19. In addition, these statements were made by Assistant Police Chiefs, or
"individuals closely involved in employment decisions" for the APD, and are therefore "sufficient
to entitle a plaintiff to a Price Waterhouse instruction." See Zip Feed Mills, 997 F.2d at 448-49. 
Finally, these statements clearly "can be interpreted as an acknowledgment of discriminatory intent
by the defendant or its agents." See Glover-Dorsey, 147 F. Supp. 2d at 662. We conclude that
Sanders's and Lopez's statements reflect direct evidence (4) that APD actually relied on the officers'
age in making the decision to adopt Policy 712 and impose time limits on specialized assignments. (5) 


Adverse Employment Action

 Appellant contends that any evidence of discriminatory intent is merely indirect and
that, in any event, a jury finding of an adverse employment action is a required element of an
employment discrimination cause of action. APD contends that without this finding, we must render
judgment in its behalf or at least reverse for a new trial. At the same time, APD admits that
sometimes the adverse action is a "given," in which case no finding is required despite its being a
required element.

 In response, appellees argue that, because they proved their case by direct evidence
of discrimination, they were not required to present a prima facie case and thus were not required
to prove they suffered an adverse employment action. In effect, they contend that the adoption of
the policy alone constituted adequate proof of their injury, and thus they did not have an obligation
to prove anything other than that an unlawful policy was adopted, without further proof of how it
harmed them.

 Establishing an unlawful employment practice is, of course, the entire point of the
plaintiff's suit, regardless of whether it is a pretext or mixed-motive case. See Quantum, 47 S.W.3d
at 478. The factual inquiry is whether the defendant intentionally discriminated against the plaintiff. 
See Aikens, 460 U.S. at 715; see also Burdine, 450 U.S. at 253. Even so, the discrimination must
be directed against the complaining employee. The crucial issue involves whether the employer used
age as a determinative factor in making an employment decision involving a particular employee or
group of employees. See Woodhouse v. Magnolia Hosp., 92 F.3d 248, 252-53 (5th Cir. 1996). The
court should instruct the jury to consider the ultimate question of whether the defendant made the
decision because of the plaintiff's age. Id. at 257. When a case has been fully tried on the merits,
the adequacy of the showing at any stage of the McDonnell Douglas framework is unimportant;
rather, the reviewing court may proceed directly to the ultimate question to determine whether there
was sufficient evidence from which a reasonable trier of fact could have concluded that age
discrimination occurred. See id. at 252-53; see also Walther, 952 F.2d at 122-23.

 Direct evidence of discriminatory intent, however, does not end the inquiry. The
Texas Supreme Court has stated that the Act "requires an employment discrimination plaintiff to
show that discrimination was a motivating factor in an adverse employment decision," regardless
of whether the case is classified as a mixed-motive or pretext case. Quantum, 47 S.W.3d at 482. 
And the fact that appellees' complaint goes to adoption of a policy found to be a seniority system
does not lessen their burden. Section 21.051 of the labor code states circumstances in which an
employer has committed an unlawful employment practice; under the statute, the practice must be
directed against the employee. Tex. Lab. Code Ann. § 21.051. Section 21.125(a) explicitly
describes what a complainant must show in order to prevail. Id. § 21.125(a). Section 21.127
confirms that a finding of intentional discrimination is required with respect to a seniority system
and sets out the three events which trigger accrual of the cause of action relating to adoption of a
discriminatory seniority system. Id. § 21.127. By whatever method the plaintiffs proceed, however,
they must establish that the employer made an employment decision adverse to the employees for
a prohibited reason.

 Assuming the officers presented their case by means of direct evidence and proved
that the APD adopted a seniority system in order to discriminate, they must still prove that the policy
adversely affected them, that is, that Policy 712 had a discriminatory effect on them. The United
States Court of Appeals for the Fifth Circuit has addressed similar issues in pretext cases, but the
underlying principles apply to a mixed-motive case, as well. Just as in any case, the court's task is
to determine the injuries caused by discrimination that require judicial relief. Armstrong v. Turner
Indus., Inc., 141 F.3d 554, 560 (5th Cir. 1998). In other words, regardless of the discriminatory
practice asserted, the employee must prove that the unlawful practice caused the employee injury.

 In the majority of employment discrimination cases, the asserted injury is an obvious
adverse employment action, such as a hiring or firing decision, resulting from discrimination based
upon a prohibited trait, such as race or age. Id. Because this case does not involve an obvious
ultimate adverse decision, the injury, if any, is less clear; the characterization of Policy 712 as a
seniority system further complicates what plaintiffs must prove. Appellees argue that violation of
the statute alone--that is, the mere adoption of a policy with discriminatory intent--constitutes the
compensable injury. Although the argument is appealing, we cannot agree. Damages must be based
on something more than an abstract violation of a statute. The policy is not discriminatory on its
face, as in TWA, nor does it produce an immediate negative effect on the officers' contractual
seniority rights, as in Lorance. A plaintiff must suffer and prove some cognizable, compensable
injury in fact, of which the violation is a legal and proximate cause. Thus, even though the policy
may have been adopted for an unlawful reason, appellees failed to prove how application of the
policy discriminated against them and caused them injury that would entitle them to compensation.

 In Tyler, the court found that plaintiff Price did not produce evidence of an adverse
employment action to support the jury's ruling in his favor. Tyler v. Union Oil Co., 304 F.3d 379,
395-96 (5th Cir. 2002). In response to the employer's complaint that Price failed to prove he
suffered an adverse employment action, Price argued that the prima facie method of proof was no
longer relevant once the case went to the jury. Id. at 393-94. In deciding the matter, the court stated
that cases supporting Price's proposition relate to elements proving discrimination, not injury. Id.
(citing Aikens, 460 U.S. at 713-14; Russell v. McKinney Hosp. Venture, 235 F.3d 219, 224 (5th Cir.
2001)). The court held that a plaintiff who proves discrimination must still prove injury in order to
recover damages. Id.; see also Armstrong, 141 F.3d at 560 (to recover damages, plaintiff must prove
cognizable injury). The plaintiffs here recovered damages because the APD adopted a
discriminatory policy. To sustain the damage award, the plaintiffs were required to show that they
suffered a cognizable injury caused by the adoption of the seniority system. 

 The policy and the evidence reflect that Policy 712 required the officers to be
transferred from specialized assignments to patrol duty under specified terms. Even on appeal,
appellees do not point out any other negative effect on their terms, conditions, or privileges of
employment; nor do they show how the resulting classification deprived them of any employment
opportunity. In fact, several of the officers who prevailed were never actually transferred, although
they may remain subject to transfer. It is undisputed that all officers have the same rank, pay
classification, job benefits, and promotional opportunities regardless of their assignment. The
officers argue that adoption of the policy for an unlawful reason in itself was an adequate showing
of injury and that they need not prove further adverse impact. They point out that they presented
evidence that the policy caused them unwanted transfers, unwelcome rotations, and resulted in
limitations on preferred assignments. They described their personal suffering as a result of the
adoption of the policy, arguing that damages were properly awarded them for inconvenience and loss
of enjoyment of life. They did not seek to show that the policy had a disparate impact on them or
resulted in their disparate treatment. 

 Although a lateral transfer may under certain circumstances give rise to an
employment discrimination action, as a general proposition an employer's policy of job assignment
is not compensable. (6) As appellant concedes, in some cases an apparently lateral transfer may in
actuality result in an adverse employment situation amounting to, for example, a demotion. See
Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999) (transfer of officer from elite unit to
severely worse unit held to be adverse under section 1983 claim). Generally, lateral transfers and
rotations promoting reasonable business purposes do not rise to a level of an adverse action without
a further showing of harm. See Serna v. City of San Antonio, 244 F.3d 479, 482-83 (5th Cir. 2001)
(in whistle-blower case, transfer without cut in pay or benefits may be adverse action but plaintiff
must show transfer caused plaintiff serious, objective, tangible harm). Although we recognize that
these cases do not involve seniority systems, similar principles apply. 

 For purposes of this appeal, we hold that the evidence proffered by the appellees
constituted direct evidence of intent to discriminate with respect to adoption of Policy 712. 
Nevertheless, we hold that even in the face of direct evidence of an intent to discriminate, the
officers must prove that the employment decision in fact caused the officers to suffer a
discriminatory adverse employment action. This they failed to do. Ordinarily, failure to submit a
necessary issue would require reversal. In this instance, in light of these unique facts, and the
absence of controlling law, we believe the interest of justice requires a new trial. See Tex. R. App.
P. 43.3(b). Appellant expressly invites this relief in the alternative. (7) 

 Because no case has expressly required a finding of injury under similar facts, in the
interest of justice we reverse the cause and remand the matter for a new trial. In light of our
disposition, we need not address appellant's remaining points of error. 


CONCLUSION


 Appellees proffered direct evidence of APD's discriminatory animus; nevertheless,
they were required to prove that Policy 712 discriminated against them and caused them to suffer
an adverse employment action. Because we hold that under these unique facts the inquiry should
have been made, we reverse the judgment of the district court and remand for new trial.



 __________________________________________

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B.A. Smith and Patterson

Reversed and Remanded

Filed: December 19, 2002

Publish

1. Tex. Rev. Civ. Stat. Ann. art. 5221k, now codified in Chapter 21 of the Texas Labor Code.
2. Under Price Waterhouse, the employer's successful showing relieved the employer of liability. 
Both the federal and state statutes now provide that the employer's showing that the employment
decision would have been made in any event only limits the employee's remedies but not the
employer's liability.
3. In her Price Waterhouse concurrence, Justice O'Connor concludes that in order to shift the
burden of persuasion to the employer, "the plaintiff must produce evidence sufficient to show that
an illegitimate criterion was a substantial factor in the particular employment decision such that a
reasonable factfinder could draw an inference that the decision was made 'because of' the plaintiff's
protected status." Price Waterhouse v. Hopkins, 490 U.S. 228, 278 (1989) (O'Connor, J.,
concurring).
4. Even if Sanders's and Lopez's statements do not constitute direct evidence of discrimination,
because the case was fully tried on the merits we do not believe that fact to be controlling. The
United States Court of Appeals for the Fifth Circuit instructs that after an employment discrimination
case has been tried on the merits, the proper inquiry is whether the judgment is supported by
sufficient evidence. See Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 933 (5th Cir. 1996);
Haun v. Ideal Indus., Inc., 81 F.3d 541, 546 (5th Cir. 1996) ("On appeal of a jury's verdict of age
discrimination, we need not address the sufficiency of [the plaintiff's] prima facie case, but proceed
to determine whether there was sufficient evidence upon which a jury could find that discrimination
occurred.").
5. We note that appellees' ability to produce direct evidence of discriminatory animus did not
result in an automatic judgment in their favor; the existence of direct evidence only shifted the
burdens of production and persuasion to APD to show that it would have made the same
employment decision regardless of appellees' age. See Price Waterhouse, 490 U.S. at 244-45. The
jury failed to find that APD would have done so.
6. We note that when asked in Question No. 2 whether as to the two officers asserting a retaliation
claim a lateral transfer was an adverse employment action, the jury answered in the negative. 
7. Appellant argues in the alternative that, had the jury found the required element, the record
contains legally and factually insufficient evidence to support a finding in appellees' favor. 
Reviewing the evidence under the proper standards of review, we hold that had the issue been asked
the record contains some evidence of injury and therefore we cannot say that the evidence is legally
insufficient to prove the fact. Without repeating the evidence set out herein, however, we hold that
the evidence in the record is so weak as to make the judgment clearly wrong and therefore factually
insufficient to prove the policy caused the officers to experience adverse harm, requiring a remand.